NOT DESIGNATED FOR PUBLICATION

No. 129,512

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

T.M.,
*Appellee*,

v.

B.M.,
*Appellant*.


MEMORANDUM OPINION

Appeal from Shawnee District Court; DENNIS C. JONES, magistrate judge. Submitted without oral argument. Opinion filed March 13, 2026. Affirmed in part and reversed in part.

*Rebekah A. Phelps-Davis*, of Phelps-Chartered, of Topeka, for appellant.

*Rene M. Netherton*, of Topeka, for appellee.

Before BOLTON FLEMING, P.J., ISHERWOOD and COBLE, JJ.

PER CURIAM: T.M. filed a petition for protection from abuse against her former husband, B.M., on behalf of herself and her two minor children. She alleged that pursuant to K.S.A. 60-3102(a)(2), B.M. made a physical threat that placed T.M. and the children in "fear of imminent bodily injury." After a contested hearing, the district court granted a final order of protection from abuse including T.M. and the minor children.

On appeal, B.M. challenges the sufficiency of the evidence that supports the district court's final order. After a thorough review of the record, we conclude that substantial, competent evidence supported the district court's factual findings that formed

1

the basis for the order of protection for T.M., but the evidence was insufficient to support the order of protection for the minor children. Accordingly, we affirm in part and reverse in part.

## FACTUAL AND PROCEDURAL BACKGROUND

T.M. filed a petition for protection from abuse against her former husband, B.M., pursuant to the Protection from Abuse Act, K.S.A. 60-3101 et seq. The case proceeded to a bench trial where the facts were, for the most part, uncontroverted.

T.M. and B.M. were married but later divorced. Two children were born of the marriage—B.S.M., a son born in 2014, and A.M., a daughter born in 2019. As part of the divorce proceedings, the parties had joint custody and scheduled parenting time.

On June 12, 2025, both T.M. and B.M. attended activities concerning their children. The evening began with their son's soccer practice. B.M. brought the parties' children to practice because it was his scheduled parenting time. According to T.M., at some point during the practice, B.M. walked by her vehicle and "pulled down the back of his shirt," showing the outline of a gun. B.M. then continued over to his other children and played with them.

Following soccer practice, the parties went to their daughter's softball game. B.M. took the children to this event as well because it was still his parenting time. T.M. and her parents sat on one end of the bleachers, while B.M. sat on the other end with his family. Following the softball game, T.M. told the parties' daughter to come get some snacks, but the daughter told T.M. she still needed to get her shoes from B.M.'s car. B.M. picked the daughter up and began carrying her toward his car. The daughter stuck her arm out for T.M. and said, "Mommy." T.M. responded, "It's okay," and went up behind her, grabbed her underneath the arms, and said, "Come on, let's say goodbye to grandma and grandpa

before they leave." B.M. said, "No. She can say goodbye at a different time," and T.M. responded with, "No, they're parked over here with me. I'm going to put the kids in the car, and we'll come down and grab the Crocs." B.M. again said no and the daughter said, "Daddy, let me go." B.M. let the daughter go.

T.M.'s father approached B.M. and said, "Listen to her." B.M. responded by saying something along the lines of, "Do something. Do something." T.M. positioned herself between B.M. and her father and told B.M., "We're not doing this." B.M. started walking backwards and then lifted his shirt displaying a gun in his front pocket. At the same time, B.M. stated, "It sure would be a shame if someone put you in your place." T.M. walked toward B.M. as he walked backwards, telling him he was not going to threaten her. The parties' children were on the sidewalk with T.M.'s mother as this occurred. After the situation ended, T.M. and her father called 911.

T.M. put the children in her car, drove to B.M.'s vehicle, and retrieved her daughter's shoes. She then went to Walmart to meet with a police officer concerning the incident between the parties. At the final hearing, T.M. testified that their daughter, A.M., asked "why daddy had a click click" and made a gesture imitating a gun. T.M. testified that her daughter was in fear.

B.M. testified he had no interaction with T.M. at the soccer fields. B.M. acknowledged that he did have a gun at the soccer practice, but he was playing "ring around the rosie out in the field with the kids" and the gun kept "jabbing" him, so he took it to his vehicle. He clarified that he did put his gun back in his front pocket prior to the softball game.

B.M. testified that following the softball game, he told T.M. that their daughter could say goodbyes after she changed shoes, but T.M. grabbed their daughter out of his

3

arms. He testified that when T.M. was pulling their daughter out of his arms, his shirt came up and got stuck on his revolver.

B.M. confirmed that he told T.M., "It would be a shame if somebody had to put you in your place." When asked on cross-examination if his intent was to threaten T.M. with that statement, B.M.'s response was "yes." B.M.'s significant other also testified at trial and confirmed B.M.'s statement to T.M.

At the conclusion of the final hearing, the district court found "the allegations of abuse are proven by a preponderance of the evidence as is required by [K.S.A.] 60-3106. I'm going to find that the defendant represents a credible threat to the physical safety of the protected persons." The district court entered a final order protecting T.M. and both minor children. B.M. timely appeals.

ANALYSIS

DID SUFFICIENT EVIDENCE SUPPORT THE DISTRICT COURT'S ORDER FOR PROTECTION FROM ABUSE?

*Standard of Review*

"When a party challenges the sufficiency of the evidence, this court determines whether the district court's factual findings are supported by substantial competent evidence and whether the findings are sufficient to support the court's legal conclusions." *J.B.B. v. J.L.B.*, 60 Kan. App. 2d 310, 317, 495 P.3d 1036 (2021).

Substantial competent evidence "refers to legal and relevant evidence that a reasonable person could accept as adequate to support a conclusion." In considering the sufficiency of evidence, appellate courts "'do not reweigh the evidence or make our own

credibility determinations, and we generally view the evidence in the light most favorable to the party who prevailed in the district court.'" 60 Kan. App. 2d at 317.

*Discussion*

K.S.A. 60-3101(b) provides that the Protection from Abuse Act shall be liberally construed "to promote the protection of victims of domestic violence from bodily injury or threats of bodily injury and to facilitate access to judicial protection for the victims, whether represented by counsel or proceeding pro se."

Under K.S.A. 60-3104(a), "An intimate partner or household member may seek relief under the protection from abuse act by filing a verified petition with any judge of the district court or with the clerk of the court alleging abuse by another intimate partner or household member." T.M. and B.M. meet the definition of "intimate partners or household members" by their previous marriage and the two children they share. K.S.A. 60-3102(b).

Once filed, the district court must consider the plaintiff's petition within 21 days, and to receive a final order of protection, a "plaintiff must prove the allegation of abuse by a preponderance of the evidence . . . ." K.S.A. 60-3106(a).

"Abuse" under the Protection from Abuse Act is defined in K.S.A. 60-3102(a). Relevant in this case is the definition of "abuse" found in K.S.A. 60-3102(a)(2): "Intentionally placing, by physical threat, another in fear of imminent bodily injury." T.M. did not allege physical injury; rather, she alleged that B.M. threatened her by his words and actions, placing her in fear of "imminent bodily injury." K.S.A. 60-3102(a)(2).

*There is sufficient evidence that B.M.'s physical threat intentionally placed T.M. in fear of imminent bodily injury.*

B.M.'s sufficiency challenge is that the evidence at trial did not demonstrate that B.M. made a physical threat that intentionally placed T.M. "in fear of imminent bodily injury" as required under K.S.A. 60-3102(a)(2). B.M. alleges that T.M.'s testimony at trial "did not provide any details of being placed in fear of imminent bodily injury by B.M." B.M. argues that T.M. did not mention being fearful in her testimony until her attorney asked if B.M.'s actions placed her in fear, to which T.M. answered, "Absolutely." B.M. argues that Kansas law required T.M. to discuss what it was about B.M.'s behavior that placed her in fear.

B.M. relies on *J.B.B. v. J.L.B.*, 60 Kan. App. 2d 310, 495 P.3d 1036 (2021), in support of his argument. In *J.B.B.*, the parties (referenced in the opinion as J.B. and J.L.) were in the process of divorcing. As part of the divorce case, J.B. was driving a truck that J.L. owned, but J.B. was still responsible for the monthly payment on the vehicle. One day, when the parties met at a convenience store to exchange custody of their minor child, the parties visited about the fact the truck payment was overdue. J.B. stated he would make the payment in the next few days and then proceeded into the store. Unsatisfied with J.B.'s response, J.L. "forcibly entered the passenger side of the vehicle, climbed over J.B.'s girlfriend, and grabbed the keys from the ignition of the truck." As a result, "[a] struggle ensued between J.L. and J.B.'s girlfriend, during which the girlfriend sustained a non-remarkable laceration." 60 Kan. App. 2d at 312.

As a result of J.L.'s actions, J.B. filed a petition for protection from abuse. The district court granted an order of protection, finding "'busting into [J.B.'s] truck and taking his keys is a threat to him and his . . . possessions, and I, consequently, am finding that it is a violation.'" 60 Kan. App. 2d at 312. A panel of our court reversed, noting "[w]e decline to find that the evidence offered in support of the protective order rose to the level

6

of substantial competent evidence required to establish that such a measure was warranted." 60 Kan. App. 2d at 318-19.

The facts in the present case are distinguishable from those in *J.B.B.* Here, B.M. admitted to making a specific statement to T.M. and admitted that he meant for the statement to serve as a threat. That statement was coupled with B.M.'s action in raising his shirt to show a gun. And the holding in *J.B.B.* does not support B.M.'s argument that T.M. had to describe her fear with particularity. B.M.'s reliance on this case is misplaced.

It is true that Kansas law requires sufficient evidence of T.M.'s "fear of imminent bodily injury" under K.S.A. 60-3102(a)(2). See *Barnett v. Barnett,* 24 Kan. App. 2d 342, 350-51, 945 P.2d 870 (1997) (evidence of fear required to prove abuse under fear of imminent bodily injury theory). But here, considering the evidence in a light most favorable to T.M., sufficient evidence exists that B.M. placed T.M. in "fear of imminent bodily injury." K.S.A. 60-3102(a)(2).

At final hearing, T.M. testified, "As he was walking backwards, he lifted up his shirt so I could see the gun in the front of his pocket, and he said, 'It sure would be a shame if someone put you in your place.'" B.M. confirmed he made this statement during his testimony. And importantly, B.M. also admitted that he made the statement with the intent to threaten T.M. Finally, when asked if B.M.'s actions and statement placed her in fear, T.M. answered, "Absolutely."

We are tasked with considering "whether the district court's factual findings are supported by substantial competent evidence and whether the findings are sufficient to support the court's legal conclusions." 60 Kan. App. 2d at 317. Here, considering the evidence in a light most favorable to T.M., we find substantial, competent evidence to support the district court's determination that T.M. was "abused" pursuant to K.S.A. 60-3102(a)(2), and that she was entitled to a final order of protection from abuse.

*B.M.'s physical threat did not place B.S.M. or A.M. in fear of imminent bodily injury.*

B.M. also challenges the sufficiency of the evidence supporting a final order of protection for his two minor children, B.S.M. and A.M. Specifically, B.M. argues that "T.M.'s testimony did not provide any details of the minor children being placed in fear of imminent bodily injury by B.M." We agree.

The district court did not make any factual findings specific to the minor children except to include them in the order of protection and to admonish B.M.'s parenting related to carrying a gun while playing with children. It is uncontroverted that the minor children were not the intended target of B.M.'s statement or actions. There was no testimony concerning B.S.M. being involved in the incident. And while T.M. testified that A.M. was frightened when she saw B.M. had a gun, there is no evidence that B.M. made a physical threat to A.M. that placed her "in fear of imminent bodily injury" as required under K.S.A. 60-3102(a)(2). A child's mere presence in the area during a threat made against a parent does not in and of itself constitute "abuse" under K.S.A. 60-3102(a)(2). See *Baker v. McCormick*, 52 Kan. App. 2d 899, 380 P.3d 706 (2016) (child's observation of abuse in parental home insufficient evidence of physical threat placing child "in fear of imminent bodily injury" under K.S.A. 60-3102[a][2]).

Even considering the evidence in a light most favorable to the minor children B.S.M. and A.M., there is insufficient evidence to support the final order of protection in this case. We therefore reverse and vacate the final order of protection as it pertains to B.S.M. and A.M.

Affirmed in part and reversed in part.